UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | § |
| | § |
| vs. | § |
| | § |
| **LUIS DURAN MONTILLA** | § CASE NO. 4:24-cr-225 |
| **GERSON ADONY CHICAS ALFARO** | § |
| **KEVEN ARMANDO MARCANO** | § |
| **ELLOY FIGUEROA PEDRAZA** | § |
| **CITLALI MARTINEZ-MORALES,** | § |
| | § |
| **Defendants.** | § |

## GOVERNMENT'S REPLY IN SUPPORT OF ITS
## MOTION TO CERTIFY CASE AS COMPLEX AND FOR A CONTINUANCE

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Assistant United States Attorney John Ganz, hereby replies to Defendants'[1] Response (ECF 67) to the Government's Motion (ECF 65) to designate this case complex and for a continuance. The Court should reject Defendants' arguments and grant the Government's Motion.

**I.    DEFENDANTS WRONGLY CHARACTERIZE THIS CASE AS AN ORDINARY STREET CRIME.**

Defendants characterize this case as a "relatively standard street-level case." Def. Response (ECF 67) at 5. They are wrong: the organization that committed this crime was large, sophisticated and well-resourced, making a complex case designation correct.

---

[1] Defendant Keven Marcano did not oppose the Government's Motion. *See* Gov't Motion (ECF 65) Certificate of Conference.

At trial, the Government will show that the victims were migrants who entered the U.S. from Mexico without inspection, then found themselves kidnapped by their smugglers. Their families were then threatened and extorted over several days. Approximately nine individuals moved the victims from the border to San Antonio and then to at least three different locations in Houston. These events spanned several days, during which approximately nine different people guarded the hostages. The hostages reported that multiple individuals came into and out of the houses in which they were held, some as co-conspirators, some as people who appear to have been in the homes to socialize. The Government has identified roughly dozens of ransom payments sent to at least five individuals via Zelle, and another batch of payments sent to at least six different Western Union locations. When one family was unable to use Zelle, the kidnapers sent a car to New York to collect the ransom payment via a hand-to-hand exchange. Finally, the FBI has identified at least eleven victims, where "victim" is defined as people who were taken hostage, made a ransom payment or who were threatened by the perpetrators.

Five defendants have been indicted, with a sixth to be added via a superseding indictment in early June. The Government expects to file a second and perhaps third superseding indictment as the investigation continues and more defendants are arrested.

This is, in other words, *not* a common street crime such as a felon-in-possession case or a buy-bust drug seizure. It is instead a complex crime carried out by a large, well-resourced criminal organization whose reach extends from the U.S.-Mexico border through Texas to New York. The case should be classified accordingly.

**II.   THE GOVERNMENT IS ACTING DILIGENTLY, BUT BECAUSE OF THE CRISIS NATURE OF THIS CRIME, A SIGNIFICANT AMOUNT OF DISCOVERY REMAINS OUTSTANDING. THE GOVERNMENT THEREFORE FILED ITS MOTION FOR COMPLEX CASE DESIGNATION IN AN EFFORT TO PROACTIVELY ASSIST THE COURT IN MANAGING ITS DOCKET.**

This crime unfolded rapidly. Defendants – cold, calculating thugs – repeatedly beat and threatened to kill their hostages. At trial, the evidence will show that one victim's family was told that if they did not pay the ransom by a certain deadline, their relative "would have a bad day."

Law enforcement moved swiftly to find and rescue the hostages. Because this investigation is both reactive and complex, a significant amount of discovery remains outstanding. This includes:

- Five phones recovered either at the home where the hostages were found or from two defendants arrested outside the home. As explained in the Government's Motion, the victims reported that the kidnappers were constantly on their phones during their days-long captivity and were photographed several times by the kidnappers. Common sense tells us that there will be an enormous amount of data on each phone, something that supports a complex case designation. Unfortunately, it is impossible to provide the Court with a specific time when the code-breaking software the FBI uses will open the phones. In the interests of justice, the Government should be given time to access the phones.

- The Government has issued eight subpoenas so far. At present, the Government hopes to have all of the returns by early July. Several of these returns will likely generate

additional investigative leads that the FBI will have to pursue, which will, in turn, create more discovery.

- This case has been investigated by over 30 FBI Special Agents, about 10 Harris County Sheriff's Deputies and five FBI Analysts. In addition, the phones and guns seized to date are being analyzed for fingerprint and DNA evidence. The Government's list of potential trial witnesses is thus large and, by extension, consistent with a complex case designation.

WHEREFORE, the government respectfully requests that the Court certify this case as complex, toll the time limits under the Speedy Trial Act, and set this case for a status hearing.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

*/s/ John S. Ganz*
John S. Ganz
Assistant United States Attorney
Illinois ARDC #6289542
1000 Louisiana Street, Suite 2300
Houston, TX 77002
PH: 713-567-9000

## **CERTIFICATE OF SERVICE**

    I hereby certify that on May 22, 2024, a copy of the government's Motion to Certify Case as Complex was filed via CM/ECF and automatically served on all counsel of record.

                                        */s/ John S. Ganz*
                                        JOHN S. GANZ
                                        Trial Attorney